# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
JEFFREY A. LOVITKY                      )
1776 K. St., N.W., Suite 800            )
Washington D.C. 20006                   )
Telephone: (202) 429-3393               )
                                        )
Plaintiff,                              )
                                        )
                                        )
v.                                      )
                                        )
JARED C. KUSHNER                        )
in his official capacity as             )
Assistant to the President &            )
Senior Advisor to the President         )  Civil Action No. _____
1600 Pennsylvania Ave., N.W.            )
Washington D.C. 20500                   )
                                        )
IVANKA TRUMP                            )
in her official capacity as             )
Advisor to the President                )
1600 Pennsylvania Ave., N.W.            )
Washington D.C. 20500                   )
                                        )
Defendants                              )
_____)

## COMPLAINT

## JURISDICTION AND VENUE

1.      This is a civil action brought to compel compliance by Defendants with the financial

disclosure requirements of the Ethics in Government Act (EIGA), 5 U.S.C. App. § 101 et seq.

This Court has jurisdiction under 28 U.S.C. § 1331 (general federal question), 28 U.S.C. § 1361

(mandamus), 28 U.S.C. § 2201 (declaratory judgment). Venue lies in this judicial district

pursuant to 28 U.S.C. § 1391(e)(1).

2.      This suit alleges that the financial disclosure statements filed by Defendants failed to disclose their financial interests in certain investment funds.  In other instances, the financial disclosure statements filed by Defendants disclosed a financial interest in an investment fund, but failed to disclose the underlying holdings of such investment funds.

3.      Plaintiff, a U.S. citizen, practices law in Washington D.C. Plaintiff is filing this action as a *pro se* party.

4.      Defendant Kushner's formal title is Assistant and Senior Advisor to the President. He is the spouse of Defendant Trump. Defendant Trump's formal title is Advisor to the President. She is the daughter of the President. Both defendants serve without pay. Exhibit 1 – Executive Office of the President, Annual Report to Congress, downloaded from https://www.whitehouse.gov/sites/whitehouse.gov/files/docs/disclosures/07012017-report-final.pdf (last accessed December 11, 2017). This suit is brought against both Defendants in their official capacities as officers of the United States government.

5.      This suit seeks to compel Defendants to amend their financial disclosure reports for the purpose of disclosing the value of, and income received from, their financial interests in the following entities:  (1) Claremount V Associates, LP; (2) Thrive Partners IV GP, LLC.

6.      This suit further seeks to compel Defendants to amend their financial disclosure reports for the purpose of disclosing the identity of the underlying holdings of the following investment vehicles in which they had a financial interest during the applicable reporting period: (1) BFPS Ventures LLC, (2) C-III Recovery Fund I LP; (3) Centerview Capital, LP; (4) Claremount V Associates, LP, (5) JK Thrive IV LLC, (6) JK Thrive V, LLC, (7) JKM Capital, LLC, (8) KF-Centerview, LLC, (9) KF-Faire Fund II, LLC, (10) KF-Park Street Capital PE Fund IX, LLC, (11) KF- RCG Longview Debt Fund IV LLC, (12) Kushner Media Ventures, LLC, (13) LW

Investors, LLC, (14) Leeds Equity Partners IV, LP, (15) Park Street Capital Private Equity Fund; (16) Quadro Partners (d/b/a Cadre), (17) RCG Longview Debt Fund IV LP; (18) Sixty Capital Fund; (19) SQ Associates, LLC, (20) Square Mile Partners, LP, (21) SQK Associates, LLC, (22) Square Mile Partners, LP; (23) The Faire Fund II, LP, (24) Thrive Capital, (25) Thrive Partners II GP, LLC, (26) Thrive Partners III GP, LLC, (27) Thrive Partners IV GP, LLC., (28) Thrive Capital Partners LLC, (29) Thrive Capital Partners II, LP, (30) Thrive Capital Partners III, LP.

7.      Defendants' failure to identify the underlying holdings of these investment vehicles deprived Plaintiff and other members of the public of the ability to ascertain the type of businesses in which Defendants had a financial interest during the applicable reporting period, the countries in which those businesses are located, as well as the key individuals associated with those businesses.

8.      On March 31, 2017, White House counsel James D. Schultz certified the disclosure report filed by Kushner as being in compliance with the requirements of the Ethics in Government Act (EIGA). On July 20, 2017, David Apol, Acting Director of the United States Office of Government Ethics, also certified the Kushner financial disclosure report as being in compliance with the EIGA. White House counsel Stefan Passantino certified the disclosure report filed by Trump as being in compliance with the EIGA on July 21, 2017.

9.      The majority of the nondisclosures alleged herein fall into two categories. First, nondisclosures concerning which the White House counsel's office and the United States Office of Government Ethics had actual knowledge when certifying the report as being in compliance with applicable laws and regulations. Second, nondisclosures patently evident from the face of the report itself. *See* 5 C.F.R. § 2634.605(b)(ii)(D)(2).

10.    The White House legal office is a component of the White House staff. The Office of

Government Ethics is an executive branch agency of the U.S. government. 5 C.F.R § 2600.101.

Like other entities within the executive branch, the OGE perform its duties under ultimate

supervision by the President. The authority of any entity in the executive branch to waive the

public disclosure requirements of the EIGA is limited to precisely defined circumstances not

here applicable. *See* e.g., 5 U.S.C. App. § 101(h); § 101(i); § 105(a).

11.    The failure of Defendants to provide the information as herein described deprived

Plaintiff of information that Plaintiff is entitled by statute to receive.  This informational injury is

itself sufficient to satisfy constitutional standing requirements.

12.    Additionally, the failure of Defendants to provide the information as herein described

deprived Plaintiff of (a) an opportunity to make an independent judgment as to whether

Defendants are or reasonably could be influenced by conflicts of interests, (b) information

required to evaluate and judge the performance of Defendants in their official duties, (c)

information required to determine whether trust in the integrity of Defendants is warranted, and

(d) information required to participate in the political process in an informed manner.

13.    The information to which Plaintiff is entitled under the EIGA must be made available to

Plaintiff if he is to have an opportunity to participate in the political process in an informed

manner. Plaintiff cannot petition members of Congress to enact legislation to strengthen conflicts

of interest laws, or to require that high-level officials take mitigating actions to eliminate any

conflicts of interests, if he lacks information concerning those conflicts. Plaintiff cannot enlist

the news media to publicize conflicts of interests and thereby bring public attention to the issue,

if he is unaware of those conflicts because the EIGA disclosures have not been provided.

Plaintiff cannot use the information in the EIGA disclosures to speak intelligently with friends,

neighbors, and colleagues concerning actual or potential conflicts of interests on the part of high-level government officials such as Defendants, in the absence of information that may reveal those conflicts.

## FACTUAL AND LEGAL BACKGROUND

14.     The EIGA requires that copies of public financial disclosure reports be furnished to any individual who agrees to the restrictions contained in 5 U.S.C. App. § 105(c) on the use of such information. The application for a copy of such report must state (a) the applicant's name, occupation and address; (b) the name and address of any other person or organization on whose behalf the report is requested; and (c) that the applicant is aware of the prohibitions on the obtaining or use of the report.  5 U.S.C. App. § 105(b)(2); 5 C.F.R. § 2634.603(c).

15.     On March 9, 2017, Kushner filed his financial disclosure report on the OGE Form 278e. Kushner revised the data on this form on numerous occasions, with the latest revision occurring on July 20, 2017. On June 12, 2017, Trump filed her financial disclosure report on OGE Form278e. The data on this form was revised by Trump on numerous occasions, with the latest revision occurring on October 17, 2017.

16.     On August 1, 2017, Plaintiff requested a copy of the financial disclosure report filed by Kushner through the website of the United States Office of Government Ethics (OGE). Plaintiff also requested copies of the periodic transaction reports filed by Kushner pursuant to 5 U.S.C. App. § 103(l), as well as any Certificates of Divestiture that were granted to Kushner. The requested documents were received via an email from the OGE on August 2, 2017 and August 8, 2017. The financial disclosure report filed by Ivanka Trump is not currently available through the OGE website.

17.     On November 2, 2017, Plaintiff also requested a copy of the financial disclosure reports

filed by both Trump and Kushner through the White House website, i.e.

https://www.whitehouse.gov/financial-disclosures. The requested documents were received via

an email from the White House on November 6, 2017.

18.    Attached as Exhibit 2 is the financial disclosure report filed by Defendant, as downloaded

from https://www.documentcloud.org/documents/3899119-Kushner-Jared-1.html (last accessed

Nov. 25, 2017). Attached as Exhibit 3 is the financial disclosure report filed by Trump, as

downloaded from https://www.documentcloud.org/documents/3899116-Trump-Ivanka-1.html

(last accessed Nov. 25, 2017).

19.    The EIGA mandates a "*full and complete statement*" of the "*source and type of income*

*which consists of dividends, rents, interest, and capital gains, received during the preceding*

*calendar year which exceeds $ 200 in amount or value.*" 5 U.S.C. App. § 102(a)(1)(B); 5 U.S.C.

app. § 102(b)(1)(A). The EIGA further mandates a "*full and complete statement*" of the "*identity*

*and category of value of any interest in property held during the preceding calendar year in a*

*trade or business, or for investment or the production of income, which has a fair market value*

*which exceeds $ 1,000…*" 5 U.S.C. App. § 102(a)(3), 5 U.S.C. app. § 102(b)(1)(A)-(B).

20.    For new entrants such as Defendants, the reporting period for income is the preceding

calendar year until the date of filing of the report.  5 U.S.C. App. § 102(b)(1)(A); 5 C.F.R §

2634.308(b)(2). The reporting period for assets is the preceding calendar year to any day within

thirty-one days of the filing of the report. 5 U.S.C. App. § 102(b)(1)(B); 5 C.F.R §

2634.308(b)(1).

21.    The EIGA further requires disclosure of the underlying assets of trusts, investment funds,

or other investment vehicles, unless such entities meets the criteria of a qualified blind trust,

qualified diversified trust, or excepted investment fund (EIF). 5 U.S.C. app. § 102(f)(1); §

102(f)(2)(C); § 102(f)(8); 5 C.F.R. § 2634.310.  Pursuant to 5 C.F.R. § 2634.301(a), the filer

must separately describe each underlying asset of entities with portfolio holdings, and report the

value of each such underlying asset. Pursuant to 5 C.F. R. § 2634.302(b)(1), the income derived

from each underlying asset of entities with portfolio holdings must be separately disclosed. *See*

*also* 5 C.F.R. § 2634.310.

22.     The instructions accompanying the OGE Form 278e states as follows:

> *If you are reporting an investment vehicle that invests in assets of its own, you need to report each underlying asset that was individually worth more than $1,000 at the end of the reporting period or that individually produced more than $200 in income during the reporting period. As an exception to this requirement, however, you do not need to report the underlying assets of an investment vehicle that qualifies as an excepted investment fund (EIF). Indicate whether your entry qualifies as an excepted investment fund. If your entry is not an investment vehicle at all, select "N/A".*

*See* Exhibit 4, Instructions accompanying OGE Form 278e, as downloaded from

https://www.oge.gov/web/oge.nsf/OGE%20Forms/48EAF45DA952AAB685257FFD006CCE93

/$FILE/OGE%20Form%20278e_PDF%20ver.pdf?open. *See also* Exhibit 5, Public Financial

Disclosure Guide, Reporting Investment Fund Interests, available at

https://www.oge.gov/Web/278eGuide.nsf/Chapters/Public%20Financial%20Disclosure%20Guid

e?opendocument. (last accessed Dec. 15, 2017)

23.     The OGE Form 278e and the accompanying Instructions were issued by the Office of

Government Ethics (OGE) pursuant to the statutory and regulatory authorities contained in 5

U.S.C. app. § 103(g); 5 U.S.C. app. § 109(18); 5 U.S.C. app. § 402(c)**;** 5 C.F.R § 2634.308(a)-

(b). *See also* S. Rep. No. 95-170, 95th Cong., 2d Sess. (1977), p. 31.

## ALLEGED VIOLATIONS BY DEFENDANTS OF THE EIGA

(a) Failure To Report Financial Interests In Claremount V Associates, LP And Thrive Partners
IV GP, LLC

24.     In a draft memorandum from Kushner in his capacity as Senior Adviser to the President

to Stefan C. Passantino, Deputy Counsel to the President, Ethics and Compliance, Kushner

requested a Certificate of Divestiture for certain assets in which he had a financial interest. The

purpose of the Certificate of Divestiture is to "*minimize the burden that would result from paying*

*capital gains tax on the sale of assets to comply with conflict of interest requirements.*" 5 C.F.R.

§ 2634.1001(b). The Certificate of Divestiture allows officials of the United States government

to defer payment of capital gains on the sale of an asset when such sale is reasonably necessary

to comply with any Federal conflict of interest statute, provided the proceeds of such sale are

reinvested in "*permitted property*", such as U.S. government obligations and diversified mutual

funds.  26 U.S.C. § 1043(b)(2)(A).  Kushner's memorandum to the Deputy White House

Counsel was released to the public by the OGE in response to a request under the Freedom of

Information Act (FOIA), and is available on the OGE website at

https://extapps2.oge.gov/FOIAStatus/FOIAResponse.nsf/OGE%20FOIA%20Responses/852580

AC00659E1D8525810000593525/$FILE/Additional%20Records%20Released%20FY17-

241.pdf?open (last accessed on November 25, 2017). The Kushner memorandum is attached

hereto as Exhibit 6.

25.     According to Kushner's memorandum to the Deputy White House Counsel, he had a

financial stake in an entity described as Claremount V Associates, LP.  Kushner's memorandum

requests that the OGE issue a Certificate of Divestiture for Claremount V Associates, LP, so that

he could defer capital gains in connection with the sale of such entity.

26.     Application for a Certificate of Divestiture involves a detailed approval process, entailing

considerable effort on the part of the applicant, agency ethics officials, and the Office of

Government Ethics.  5 C.F.R. § 2634.1005. This process further entails additional tax reporting

obligations on the part of the applicant. Moreover, strict limitations must be observed as to the timing of the disposal of the asset, the time by which the proceeds from such sale must be reinvested, and the types of property in which the proceeds from such sale may be reinvested. 5 C.F.R. § 2634.1004; 5 C.F.R. § 2634.1006. It is plausible to infer that the fair market value of Defendant's interest in Claremount V Associates, LP exceeded $1,000. Otherwise, the minimal tax burden resulting from such sale would not justify the effort involved in seeking the Certificate, as well as the additional obligations and limitations imposed by the Certificate of Divestiture process.

27.     According to documents filed with the SEC, Claremount V Associates, LP, is a Pooled Investment Fund/Venture Capital Fund. *See* Exhibit 7, as downloaded from https://www.sec.gov/Archives/edgar/data/1678274/000101297516001360/xslFormDX01/primar y_doc.xml (last accessed Nov. 25, 2017). As such, Kushner was also required to report each underlying asset of Claremount V Associates, LP worth more than $1,000, as well as the category of value of each such underlying asset, and any income derived from each such underlying asset in excess of $200. *See* 5 U.S.C. app. § 102(a)(1), 5 U.S.C. app. § 102(a)(3), 5 U.S.C. app. § 102(b)(1); 5 U.S.C. app. § 102(f)(1); 5 U.S.C. app. § 102(f)(8); 5 C.F.R. § 2634.301(a), 5 C.F.R. § 2634.302, 5 C.F.R. § 2634.310, as well as the Instructions issued by OGE for completion of OGE Form 278e.

28.     Kushner violated the public disclosure requirements of the EIGA by failing to report his interest in Claremount V Associates, LP, as well as the category of value of such interest, and any income derived therefrom during the reporting period in excess of $200. *See* 5 U.S.C. app. § 102(a)(1); 5 U.S.C. app. § 102(a)(3); 5 U.S.C. app. § 102(b)(1); 5 C.F.R. § 2634.301, 5 C.F.R. § 2634.302. Kushner further violated the public disclosure requirements of the EIGA by failing

to identify in his financial disclosure report his financial interests worth more than $1,000 in each underlying holding of Claremount V Associates, LP, as well as the category of value of each such underlying asset, and any income derived during the reporting period from each such asset in excess of $200. *See* 5 U.S.C. app. § 102(a)(1), 5 U.S.C. app. § 102(a)(3), 5 U.S.C. app. § 102(b)(1); 5 U.S.C. app. § 102(f)(1); 5 U.S.C. app. § 102(f)(8); 5 C.F. R. § 2634.301(a), 5 C.F.R. § 2634.302, 5 C.F.R. § 2634.310, as well as the Instructions issued by OGE for completion of OGE Form 278e.

29.     Trump violated the public disclosure provisions of the EIGA by failing to identify her spouse's interest in Claremount V Associates, LP, as well as the category of value of such interest, and any income derived therefrom during the reporting period in excess of $200. *See* 5 U.S.C. app. § 102(e)(1), 5 C.F.R. § 2634.309.  Trump further violated the public disclosure requirements of the EIGA by failing to identify her spouse's interest in each underlying holding of Claremount V Associates, LP, as well as the category of value of each such underlying asset, and any income derived during the reporting period from each such asset in excess of $200. 5 U.S.C. app. § 102(e)(1), 5 C.F.R. § 2634.309.

30.     In the same memorandum, Kushner also requested a Certificate of Divestiture for an entity described as Thrive Partners IV GP, LLC, so that he could defer capital gains in connection with the sale of such entity. It is plausible to infer that the fair market value of Kushner's interest in Thrive Partners IV GP, LLC exceeded $1,000. Otherwise, the minimal tax burden resulting from such sale would not justify the effort involved in seeking the Certificate, as well as the additional obligations and limitations imposed by the Certificate of Divestiture process.

31.     According to SEC records, Thrive Partners IV GP, LLC is the General Partner in two

Limited Partnerships, i.e., Thrive Capital Partners IV, L.P. and Thrive Capital Partners IV

Supplemental, L.P. *See* Exhibit 8 (Thrive Capital Partners IV, L.P.) downloaded from

https://www.sec.gov/Archives/edgar/data/1619260/000161926014000001/xslFormDX01/primar

y_doc.xml (last accessed November 25, 2017) and Exhibit 9 (Thrive Capital Partners IV

Supplemental, L.P.), downloaded from

https://www.sec.gov/Archives/edgar/data/1619261/000161926114000001/xslFormDX01/primar

y_doc.xml. (last accessed November 25, 2017). Thrive Capital Partners IV, L.P. and Thrive

Capital Partners IV Supplemental, L.P. are both described in records filed with the SEC as

Pooled Investment Funds/Venture Capital Funds.  Thrive Partners IV GP, LLC is accordingly an

investment vehicle for which separate disclosure was required by Kushner of each underlying

asset of Thrive Partners IV GP, LLC worth more than $1,000, or which individually produced

more than $200 in income.

32.     However, the financial disclosure report filed by Kushner failed to disclose his interest in

Thrive Partners IV GP, LLC.  Nor did Kushner disclose any financial interests in the underlying

assets of Thrive Partners IV GP, LLC, Thrive Capital Partners IV, L.P., or Thrive Capital

Partners IV Supplemental, L.P.

33.     Kushner violated the public disclosure requirements of the EIGA by failing to identify in

his financial disclosure report his interest in Thrive Partners IV GP, LLC, as well as the category

of value of such interest, and any income derived therefrom during the reporting period in excess

of $200. *See* 5 U.S.C. app. § 102(a)(1); 5 U.S.C. app. § 102(a)(3); 5 U.S.C. app. § 102(b)(1); 5

C.F. R. § 2634.301, 5 C.F. R. § 2634.302.  Kushner further violated the public disclosure

requirements of the EIGA by failing to identify in his financial disclosure report his financial

interests worth more than $1,000 in each underlying holding of Thrive Partners IV GP, LLC, as well as the category of value of each such underlying asset, and any income derived during the reporting period from each such asset in excess of $200. *See* 5 U.S.C. app. § 102(a)(1), 5 U.S.C. app. § 102(a)(3), 5 U.S.C. app. § 102(b)(1); 5 U.S.C. app. § 102(f)(1); 5 U.S.C. app. § 102(f)(8); 5 C.F. R. § 2634.301(a), 5 C.F.R. § 2634.302, 5 C.F.R. § 2634.310, as well as the Instructions issued by OGE for completion of OGE Form 278e.

34.     Trump violated the public disclosure provisions of the EIGA by failing to identify her spouse's interest in Thrive Partners IV GP, LLC, as well as the category of value of such interest, as well as any income derived therefrom during the reporting period in excess of $200. 5 U.S.C. app. § 102(e)(1), 5 C.F.R. § 2634.309. Trump further violated the public disclosure requirements of the EIGA by failing to identify her spouse's interest in each underlying holding of Thrive Partners IV GP, LLC, as well as the category of value of each such underlying asset, and any income derived during the reporting period from each such asset in excess of $200. 5 U.S.C. app. § 102(e)(1), 5 C.F.R. § 2634.309.

(b) Failure To Disclose Underlying Assets Of Thrive Capital and BFPS Ventures, LLC

35.     In a memorandum to the Director of the OGE requesting issuance to Kushner of a Certificate of Divestiture, White House Counsel Donald McGahn detailed the underlying assets of two entities described as Thrive Capital and BFPS Ventures, LLC.  This memorandum was released to the public by the OGE in response to a request under the Freedom of Information Act (FOIA), and is also available on the OGE website.  The McGahn memorandum is attached as Exhibit 10, and may be downloaded from

https://extapps2.oge.gov/FOIAStatus/FOIAResponse.nsf/OGE%20FOIA%20Responses/852580 AC00659E1D8525810000593525/$FILE/Additional%20Records%20Released%20FY17-

241.pdf?open (last accessed November 25, 2017).

36.     The memorandum from White House Counsel Donald F. McGahn states that many of the potentially conflicting assets owned by Kushner are "*held through several funds managed by Thrive Capital, a venture capital firm, and through BFPS Ventures, LLC, a private investment vehicle.*" This memorandum seeks to justify issuance of a Certificate of Divestiture on the grounds that Kushner's financial interests in the underlying assets of Thrive Capital and BFPS Ventures, LLC would disqualify him from participating in a large variety of matters. The memorandum further notes that recusal would not be a practical remedy given the broad scope of the underlying assets of these entities and the extensive nature of Kushner's responsibilities.

37.     The McGahn memorandum identifies the following underlying assets of Thrive Capital that would could create a serious conflict of interest, thereby justifying issuance of the Certificate of Divestiture: Twitch, Harry's, Kickstarter, Paperless, Warby-Parker, Spotify, Compass, Justworks, Oscar Health Insurance, Morty's Inc. Mr. McGahn further states as follows: "*Other Thrive Capital holdings are active in education, fitness, video messaging, payment process, consumer lending, medical billing, renters and homeowners insurance, and a host of other industries*."  The McGahn memorandum further identifies Circle 9, an oil and gas exploration company, as an underlying asset of BFPS Ventures, LLC that would create a serious conflict of interest, thereby justifying issuance of the Certificate of Divestiture.

38.     Both Thrive Capital and BFPS Ventures LLC, are investment vehicles for which disclosure must be made of each underlying asset worth more than $1,000, as well as the category of value of each such underlying asset, and any income derived during the reporting period from each such asset in excess of $200. However, neither Kushner nor Trump identified in their financial disclosure statements *any* of the above-mentioned underlying assets of Thrive

Capital and BFPS Ventures LLC. It is plausible to infer that the fair market value of Kushner's interest in at least some of the underlying assets of Thrive Capital and BFPS Ventures LLC exceeded $1,000. Otherwise, the minimal tax burden resulting from such sale would not justify the effort involved in seeking the Certificate, as well as the additional obligations and limitations imposed by the Certificate of Divestiture process..

39.     Defendants violated the public disclosure requirements of the EIGA by failing to identify in their respective financial disclosure reports their financial interests in each of the underlying holdings of Thrive Capital and BFPS Ventures LLC worth more than $1,000, as well as the category of value of each such underlying asset, and any income derived during the reporting period from each such asset in excess of $200. *See* 5 U.S.C. app. § 102(a)(1), 5 U.S.C. app. § 102(a)(3), 5 U.S.C. app. § 102(b)(1); 5 U.S.C. app. § 102(f)(1); 5 U.S.C. app. § 102(f)(8); 5 C.F.R. § 2634.301(a), 5 C.F.R. § 2634.302, 5 C.F.R. § 2634.310, as well as the Instructions issued by OGE for completion of OGE Form 278e. *See also* Senate Report 95-170 (1977), at 123-124.

(c) Failure To Disclose Underlying Assets Of The Six JK-Trump Listings Identified Below

40.     An endnote on the OGE Form 278e filed by Defendants with respect to (1) JKM Capital, LLC, (Kushner Part 6, Line 22) (Trump Part 6, Line 22); (2) Thrive Partners II GP, LLC, (Kushner Part 6, Line 23) (Trump Part 6, Line 23); (3) Thrive Partners III GP, LLC, (Kushner Part 6, Line 24), (Trump Part 6, Line 24); (4) JK Thrive IV LLC, (Kushner Part 6, Line 25), (Trump Part 6, Line 25); (5) JK Thrive V, LLC, (Kushner Part 6, Line 26), (Trump Part 6, Line 26); and (6) C-III Recovery Fund I LP; (Kushner Part 6, Line 154) (Trump Part 6, Line 154) states as follows: "*Underlying assets are not disclosed due to preexisting confidentiality agreement. This asset has been divested.*" The six entities identified in this paragraph are herein referred to as the "*six JK-Trump listings.*"

14

41.     Defendants' financial disclosure reports clearly indicates that disclosure of underlying assets would have been required were it not for the preexisting confidentiality agreements.  As such, it may plausibly be inferred that the six JK-Trump listings are investment vehicles for which disclosure of underlying assets was otherwise required.

42.     The EIGA does not allow a reporting individual to refuse to disclose the underlying assets of an investment vehicle, on the basis that such disclosure would violate a pre-existing confidentiality agreement.  Nor does the EIGA allow a reporting individual to refuse to disclose the amount of income derived from any underlying asset of an investment vehicle, on the basis that such disclosure would violate a pre-existing confidentiality agreement. The OGE may authorize a public filer to file confidential disclosure forms, but only with respect to information that is not required to be publicly disclosed pursuant to 5 U.S.C. app. §102.  *See* 5 U.S.C. app. §107; 5 C.F.R. § 2634.904(a)(3); 5 C.F.R. § 2634.907(k)(1).

43.     The only circumstances in which information required to be disclosed under 5 U.S.C. app. § 102 may be treated as confidential are not applicable in this case. The EIGA permits a reporting individual on whose behalf payments are made to charitable organizations to report the recipients of such contributions on a confidential basis. 5 U.S.C. app. § 102(a)(1)(A).   A reporting individual also need not disclose the source of earned income when such information "*is considered confidential as a result of a privileged relationship, established by law.*"  5 U.S.C. app. § 102(a)(6)(B)(ii).  Based upon a search of public records, neither Kushner nor Trump are practicing attorneys, and as such cannot assert attorney-client privilege as a basis for withholding information. Moreover, the income derived from the investment vehicles identified above is not earned income, as indicated by the fact that it is disclosed in Part 6 of the financial disclosure statement used to report investment income, instead of Part 4 of the financial disclosure

statement used to report earned income. *See* OGE Instructions, Form 278e, Part 4, and Part 6. Further supporting the allegation that payments from these investment vehicles are not earned income is that such payments are classified as capital gains from an asset sale.

44.    Pursuant to 26 U.S.C. § 1043(b)(2)(A), Kushner obtained a Certificate of Divestiture in connection with the sale of five of the six JK-Trump listings*,* i.e., (a) JKM Capital, LLC, (b) Thrive Partners II GP, LLC, (c) Thrive Partners III GP, LLC, (d) JK Thrive IV LLC, and (e) JK Thrive V LLC. *See* Exhibit 11, Certificate of Divestiture OGE-2017-007, as downloaded from https://www.aclu.org/sites/default/files/field_document/oge_foia_fy-121_final_response_records_redacted.pdf (last accessed December 6, 2017).

45.    The Certificate of Divestiture allowed Kushner to minimize payment of capital gains on the sale of these entities.  26 U.S.C. § 1043.  The Certificate was granted on the basis that the sale of these five entities was required to comply with federal conflicts of interest laws. 26 U.S.C. § 1043(b)(2). *See also* 5 C.F.R. § 2634.1001. Notwithstanding that the sale of these entities was required to comply with federal conflict of interest laws, Kushner failed to publicly disclose the underlying assets of these entities.

46.    Defendants violated the public disclosure requirements of the EIGA by failing to identify in their respective financial disclosure reports their financial interests worth more than $1,000 in the underlying holdings of the six JK-Trump listings, as well as the category of value of each such underlying asset, and any income derived during the reporting period from each such asset in excess of $200. *See* 5 U.S.C. app. § 102(a)(1), 5 U.S.C. app. § 102(a)(3), 5 U.S.C. app. § 102(b)(1); 5 U.S.C. app. § 102(f)(1); 5 U.S.C. app. § 102(f)(8); 5 C.F. R. § 2634.301(a), 5 C.F.R. § 2634.302, 5 C.F.R. § 2634.310, as well as the Instructions issued by OGE for completion of OGE Form 278e.

(d) <u>Failure To Disclose Underlying Assets Of The Trump/Kushner Investments Identified By The Entry "No" In The EIF Column</u>

47.      The entry "*No*" appears in the EIF column for each of the following seventeen assets in the financial disclosure reports filed by Defendants: (1) KF-Faire Fund II, LLC/The Faire Fund II, LP, (Kushner Part 6, Line 2.21), (Trump Part 6, Line 2.21);  (2) KF-Park Street Capital PE Fund IX, LLC/Park Street Capital Private Equity Fund (Kushner Part 6, Line 2.22), (Trump Part 6, Line 2.22);  (3) KF- RCG Longview Debt Fund IV, LLC/RCG Longview Debt Fund IV LP (Kushner Part 6, Line 2.23), (Trump Part 6, Line 2.23); (4) LW Investors, LLC/ Leeds Equity Partners IV, LP, (Kushner Part 6, Line 2.24), (Trump Part 6, Line 2.24); (5) Kushner Media Ventures, LLC, (Kushner Part 6, Line 2.25), (Trump Part 6, Line 2.25); (6) Thrive Capital Partners LLC, (Kushner Part 6, Line 2.25), (Trump Part 6, Line 2.25); (7) Thrive Capital Partners II, LP, (Kushner Part 6, Line 2.26), (Trump Part 6, Line 2.26); (8) Thrive Capital Partners III, LP, (Kushner Part 6, Line 2.27), (Trump Part 6, Line 2.27); (9) KF-Centerview, LLC/Centerview Capital, LP; New York, NY (Kushner Part 6, Line 3.24), (Trump Part 6, Line 3.24);  (10) SQ Associates, LLC/Square Mile Partners, LP (Kushner Part 6, Line 3.25), (Trump Part 6, Line 3.25); (11) SQK Associates, LLC/Square Mile Partners, LP (Kushner Part 6, Line 3.26), (Trump Part 6, Line 3.26); (12) Sixty Capital Fund (Hedge Fund) (Kushner Part 6, Line 19.7), (Trump Part 6, Line 19.7); (13) JKM Capital, LLC, (Kushner Part 6, Line 22) (Trump Part 6, Line 22); (14) Thrive Partners II GP, LLC, (Kushner Part 6, Line 23) (Trump Part 6, Line 23); (15) Thrive Partners III GP, LLC, (Kushner Part 6, Line 24), (Trump Part 6, Line 24); (16) JK Thrive IV LLC, (Kushner Part 6, Line 25), (Trump Part 6, Line 25); (17) C-III Recovery Fund I LP; (Kushner Part 6, Line 154) (Trump Part 6, Line 155).

48.      Based on the "*No*" entry in the EIF column for each of the above listings (as opposed to

"*N/A*"), each such entity was an investment vehicle for which disclosure of underlying assets was required, provided that such underlying assets were individually worth more than $1,000, or individually produced more than $200 in income. *See* Instructions accompanying the OGE Form 278e, Part 2. It may plausibly be inferred that more than $200 in income was produced from at least one underlying asset of each of these investment vehicles, based upon the total amount of income reported for each of these investment vehicles.

49.     In some cases, Defendants failed to list *any* underlying assets of these entities. *See* Thrive Capital Partners II, LP, (Kushner Part 6, Line 2.26), (Trump Part 6, Line 2.26); Thrive Capital Partners III, LP, (Kushner Part 6, Line 2.27), (Trump Part 6, Line 2.27); Sixty Capital Fund (Hedge Fund) (Kushner Part 6, Line 19.7), (Trump Part 6, Line 19.7); JKM Capital, LLC, (Kushner Part 6, Line 22) (Trump Part 6, Line 22); Thrive Partners II GP, LLC, (Kushner Part 6, Line 23) (Trump Part 6, Line 23); Thrive Partners III GP, LLC, (Kushner Part 6, Line 24), (Trump Part 6, Line 24); JK Thrive IV LLC, (Kushner Part 6, Line 25), (Trump Part 6, Line 25); C-III Recovery Fund I LP; (Kushner Part 6, Line 154) (Trump Part 6, Line 155).

50.     In other cases, Defendants only reported underlying assets which themselves were separate investment vehicles in their own right. See KF-Faire Fund II, LLC/The Faire Fund II, LP, (Kushner Part 6, Line 2.21), (Trump Part 6, Line 2.21); KF-Park Street Capital PE Fund IX, LLC/Park Street Capital Private Equity Fund (Kushner Part 6, Line 2.22), (Trump Part 6, Line 2.22); KF- RCG Longview Debt Fund IV, LLC/RCG Longview Debt Fund IV LP (Kushner Part 6, Line 2.23), (Trump Part 6, Line 2.23); LW Investors, LLC/ Leeds Equity Partners IV, LP, (Kushner Part 6, Line 2.24), (Trump Part 6, Line 2.24); Kushner Media Ventures, LLC/ Thrive Capital Partners LLC, (Kushner Part 6, Line 2.25), (Trump Part 6, Line 2.25); KF-Centerview, LLC/Centerview Capital, LP; New York, NY (Kushner Part 6, Line 3.24), (Trump Part 6, Line

3.24);  SQ Associates, LLC/Square Mile Partners, LP (Kushner Part 6, Line 3.25), (Trump Part

6, Line 3.25); SQK Associates, LLC/Square Mile Partners, LP (Kushner Part 6, Line 3.26),

(Trump Part 6, Line 3.26).

51.     The disclosure reports filed by Defendants lists Thrive Capital Partners LLC as an

underlying asset of Kushner Media Ventures, LLC.  *See* Kushner Media Ventures, LLC,

(Kushner Part 6, Line 2.25); (Trump Part 6, Line 2.25). Thrive Capital Partners LLC is a venture

capital firm. *See* Kushner disclosure statement, Part I, Line No. 256. As a venture capital firm,

Thrive Capital Partners LLC was itself a separate investment vehicle in which Defendants had a

financial interest. As such, Defendants were also required to report the underlying assets of

Thrive Capital Partners LLC. It may further be plausibly inferred that at least some of the

underlying assets of Thrive Capital Partners LLC exceeded $1,000 in value or generated income

in excess of $200, based up the fact that Defendants received income from its investment in

Thrive Capital Partners LLC in the $100,000 - $1,000,000 range during the applicable reporting

period.  (Kushner Part 6, Line 2.25); (Trump Part 6, Line 2.25).

52.     Park Street Capital Private Equity Fund (Kushner Part 6, Line 2.22), (Trump Part 6, Line

2.22) is a private equity fund whose objective is to assemble "*strategically diversified portfo-*

*lios.*" See Exhibit 12 containing a description of the Park Street Capital investment objectives,

available at https://www.parkstreetcapital.com/ui/docs/PS_Private_Equity.pdf (last accessed

November 25, 2017).  As such, Park Street Capital Private Equity Fund is itself a separate

investment vehicle in which Defendants had a financial interest, thereby requiring disclosure by

Defendants of the underlying assets of this fund. It may plausibly be inferred that more than

$200 in income was produced from at least one underlying asset of this investment vehicle,

based upon the total amount of income reported for this investment vehicle.

53.     RCG Longview Debt Fund IV LP (Kushner Part 6, Line 2.23) (Trump Part 6, Line 2.23) is a Real Estate Investment Limited Partnership with approximately 119 investors offering securities valued at approximately $602,540,000. See SEC Form D, attached as Exhibit 13, downloaded from https://www.sec.gov/Archives/edgar/vprr/0900/09003086.pdf (last accessed November 15, 2017). As such, RCG Longview Debt Fund IV LP is itself a separate investment vehicle in which Defendants had a financial interest, thereby requiring disclosure by Defendants of the underlying assets of this fund from which they derived during the reporting period income in excess of $200. It may plausibly be inferred that more than $200 in income was derived from at least one underlying asset of this investment vehicle, based upon the total amount of income reported by Defendant for this investment vehicle.

54.     Centerview Capital, LP (Kushner Part 6, Line 3.24) (Trump Part 6, Line 3.24) is a Private Equity Fund with a $10,000,000 minimum investment. The Fund has sold approximately $850,000,000 worth of partnership interests to approximately 64 accredited investors. See SEC Form D, attached as Exhibit 14, downloaded from https://www.sec.gov/Archives/edgar/vprr/0708/07083646.pdf (last accessed November 15, 2017). As such, Centerview Capital, LP is itself a separate investment vehicle in which Defendants had a financial interest, thereby requiring disclosure by Defendants of the underlying assets of this fund. It may plausibly be inferred that more than $200 in income was derived from at least one underlying asset of this investment vehicle, based upon the total amount of income reported by Defendants for this investment vehicle.

55.     Square Mile Partners, LP (Kushner Part 6, Line 3.25 and 3.26) (Trump Part 6, Line 3.25 and 3.26) describes itself in its SEC filings as an "*investment vehicle.*"  It has sold limited partnership interests to approximately 82 investors valued at approximately $65 million.  See

SEC Form D, attached as Exhibit 15, downloaded from

https://www.sec.gov/Archives/edgar/vprr/0604/06043425.pdf (last accessed November 15,

2017).  As such, Square Mile Partners, LP is itself a separate investment vehicle in which

Defendants had a financial interest, thereby requiring disclosure by Defendants of the underlying

assets of this vehicle.  It may plausibly be inferred that more than $200 in income was derived

from at least one underlying asset of this investment vehicle, based upon the total amount of

income reported by Defendants for this investment vehicle.

56.     Defendants violated the public disclosure requirements of the EIGA by failing to identify

in their respective financial disclosure reports each underlying asset of the entities identified in

Paragraph 47, from which they derived income during the reporting period in excess of $200.

*See* 5 U.S.C. app. § 102(a)(1), 5 U.S.C. app. § 102(b)(1); 5 U.S.C. app. § 102(f)(1); 5 U.S.C.

app. § 102(f)(8); 5 C.F.R. § 2634.302, 5 C.F.R. § 2634.310, as well as the Instructions issued by

OGE for completion of OGE Form 278e. *See also* Senate Report 95-170 (1977), at 123-124.

(e) Failure To Disclose Underlying Assets Of Quadro Partners (d/b/a Cadre)

57.     The financial disclosure reports filed by Defendants further disclose an interest in Quadro

Partners (d/b/a Cadre) (Kushner Part 6, Lines 19.3 and 19.9). (Trump Part 6, Lines 19.3 and

19.9). The financial disclosure report filed by Kushner states as follows: "*Filer has been and will

continue to be recused from particular matters in the broker-dealer, real estate, and online

financial services sectors to the extent they would have a direct and predictable effect on Cadre*."

The financial disclosure report filed by Trump does not contain similar language, thereby

indicating that Trump has not recused herself from participation in matters that would have a

direct effect on Quadro Partners (d/b/a Cadre).

58.     Quadro Partners (d/b/a Cadre) is described in the financial disclosure reports filed by

Defendants as a Real Estate Investment Platform. (Kushner Part 6, Line 19.3) (Trump Part 6, Line 19.3). According to the Cadre website, Cadre is an investment platform "*that connects qualified individuals and institutions to fully vetted, compelling real estate investment opportunities*." https://cadre.com/about (last accessed November 15, 2017). The website further states as follows: "*The Website and the offerings therein are intended only for accredited investors (for persons residing in the U.S.), and for persons residing abroad in jurisdictions where securities registration exemptions apply*." The website further states: "*We invest alongside our clients, and assume ongoing oversight and asset management responsibilities on behalf of our investors*." Exhibit 16, screen snapshots from https://cadre.com/about (last accessed Nov. 15, 2017). According to an article about Cadre by Mr. Jeff Jordan featured on the Cadre website, "*Cadre is designed to give accredited investors direct access to slices of individual commercial real estate investments, allowing deal-by-deal discretion*." Exhibit 17, downloaded from https://a16z.com/2017/06/06/cadre/ (last accessed November 15, 2017). According to another article featured on Cadre's website: "*Cadre is an e-commerce site for investing in real estate. It connects customers--primarily wealthy individuals, referred to as "qualified purchasers"--to property deals across the U.S.*" https://www.inc.com/zoe-henry/30-under-30-2017-cadre.html (last accessed Nov. 15, 2017). In its filings with the Financial Industry Regulatory Authority (FINRA), Cadre's brokerage unit, CCV LLC, states that it performs "*portfolio management for pooled investment vehicles*." Exhibit 18, Excerpts from Form ADV, Item 5, downloaded from https://www.adviserinfo.sec.gov/IAPD/content/ViewForm/crd_iapd_stream_pdf.aspx?ORG_PK =281876 (last accessed Nov. 15, 2017).

59.     Quadro Partners (d/b/a Cadre) is an investment vehicle that invests its own assets as well

as the assets of its clients in a portfolio of investments offered through its website. As such,

Quadro Partners (d/b/a Cadre) is an investment vehicle for which Defendants must report their

financial interests in the individual underlying assets of this entity that are worth more than

$1,000, as well as the category of value of each such underlying asset, and any income derived

from such underlying assets in excess of $200.

60.     Defendants reported the value of their financial interests in Quadro Partners (d/b/a Cadre)

as falling within the $5,000,001 - $25,000,000 range, and further reported income from this

entity in the $100,000 - $1,000,000 range. (Kushner Part 6, Lines 19.3 and 19.9). (Trump Part 6,

Lines 19.3 and 19.9).  It may be plausibly inferred that Defendants financial interest in at least

some of the individual underlying assets of Quadro Partners (d/b/a Cadre) exceeded $1,000,

based upon the value of their total financial interests in this entity.  It may further be plausibly

inferred that Defendants derived income from at least some of the individual underlying assets of

Quadro Partners (d/b/a Cadre) in excess of $200, based upon their total reported income from

this entity.

61.     Defendants violated the public disclosure requirements of the EIGA by failing to disclose

each underlying asset of Quadro Partners (d/b/a Cadre) worth more than $1,000, as well as the

category of value of each such underlying asset, and any income derived during the reporting

period from each such asset in excess of $200. *See* 5 U.S.C. app. § 102(a)(1), 5 U.S.C. app. §

102(a)(3), 5 U.S.C. app. § 102(b)(1); 5 U.S.C. app. § 102(f)(1); 5 U.S.C. app. § 102(f)(8); 5 C.F.

R. § 2634.301(a), 5 C.F.R. § 2634.302, 5 C.F.R. § 2634.310, as well as the Instructions issued by

OGE for completion of OGE Form 278e.

## COUNT I (MANDAMUS)

62.     The allegations in Paragraphs 1-61 are incorporated as if fully set forth herein.

63.     Defendants had a non-discretionary duty to disclose their financial interests, as well as the value of such interests, and any income derived therefrom, in the following entities:  (1) Claremount V Associates, LP; (2) Thrive Partners IV GP, LLC. Plaintiff has a clear right to know the information that Defendant was required to report.

64.     Defendants had a non-discretionary duty to disclose their financial interests, as well as the value of such interests, and any income derived therefrom, in the underlying assets of the following entities: (1) BFPS Ventures LLC, (2) C-III Recovery Fund I LP; (3) Centerview Capital, LP; (4) Claremount V Associates, LP, (5) JK Thrive IV LLC, (6) JK Thrive V, LLC, (7) JKM Capital, LLC, (8) KF-Centerview, LLC, (9) KF-Faire Fund II, LLC, (10) KF-Park Street Capital PE Fund IX, LLC, (11) KF- RCG Longview Debt Fund IV LLC, (12) Kushner Media Ventures, LLC, (13) LW Investors, LLC, (14) Leeds Equity Partners IV, LP, (15) Park Street Capital Private Equity Fund; (16) Quadro Partners (d/b/a Cadre), (17) RCG Longview Debt Fund IV LP; (18) Sixty Capital Fund; (19) SQ Associates, LLC, (20) Square Mile Partners, LP, (21) SQK Associates, LLC, (22) Square Mile Partners, LP; (23) The Faire Fund II, LP, (24) Thrive Capital, (25) Thrive Partners II GP, LLC, (26) Thrive Partners III GP, LLC, (27) Thrive Partners IV GP, LLC., (28) Thrive Capital Partners LLC, (29) Thrive Capital Partners II, LP, (30) Thrive Capital Partners III, LP. Plaintiff has a clear right to know the information that Defendants were required to report.

65.     There are no other remedies available to Plaintiff, except relief in the nature of mandamus. Plaintiff lacks standing to bring an action against the Office of Government Ethics (OGE) under the Administrative Procedure Act (APA), because a favorable decision from the Court would not be likely to redress Plaintiff's injuries. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992).

66.     The Ethics in Government Act excludes the OGE from the list of government entities that have authority to order personnel or other action against a reporting individual who fails to adhere to the EIGA's public disclosure provisions. 5 U.S.C. app. § 104(c).

67.     Further, the OGE does not have authority to make any determination with respect to whether a criminal ethics law has been violated.  5 C.F.R. § 2638.501; 5 C.F.R. § 2638.502. The statute provides that criminal fines may be imposed upon any individual who willfully fails to report information that must be disclosed.  5 U.S.C. app. § 104(a)(2)(B)(ii).

68.     Even with respect to non-criminal violations, the OGE may issue only a *nonbinding* recommendation of disciplinary or corrective action. 5 C.F.R. § 2638.501; 5 C.F.R. § 2638.504(e)(2). Therefore, the OGE lacks authority to make any binding determination as to whether Defendants violated the public disclosure provisions of the EIGA.

69.     Any authority OGE may have to issue a binding order is limited solely to rectifying ongoing violations of the EIGA pursuant to 5 C.F.R § 2638.504(e)(3). However, such an order mat be directed only to an "*employee*", which in turn is defined as an employee of an "*agency.*" 5 C.F.R § 2638.603. The term "*agency*" is itself defined as an "*executive department, military department, Government corporation, independent establishment, board, commission, or agency.*" *Id*. Defendants, who serve on the immediate personal staff of the President, are not employees of an "*agency.*" Nor are Defendants employees of an executive department.  *See* 5 U.S.C. § 101. As such, the OGE has no authority to require Defendants to make the public disclosures sought by this litigation.

70.     The OGE does not have authority to even review the financial disclosure reports filed by Defendants.  The Director of the OGE reviews "*only those reports required to be transmitted to him*…" 5 U.S.C. app. § 106(a)(1). The disclosure reports required to be transmitted to the OGE

are set forth in 5 U.S.C. app. § 106.  Specifically, reports filed by employees described in 3 U.S.C. §§ 105(a)(2)(A) or (B), 106(a)(1)(A) or (B), or 107(a)(1)(A) or (b)(1)(A)(i) must be transmitted to the OGE. 5 U.S.C. app. § 106(c). *See also* 5.C.F.R. § 2634.602(c).  Pursuant to these provisions, the OGE reviews the financial disclosure reports of only those White House employees whose pay is above certain prescribed levels.  Defendants do not receive any compensation from the federal government.  As such, the OGE does not have authority to review their financial disclosure reports.

71.     The provisions of 28 U.S.C. § 1361 provide a statutory basis for jurisdiction in cases seeking relief in the nature of mandamus against federal officers. The provisions of 28 U.S.C. § 1361 also provide for an independent cause of action in the absence of any other available remedies.

72.     Granting the relief requested herein would serve the public interest. Defendants operate at the very pinnacle of governmental power. As senior counselors to and immediate family members of the President of the United States, Defendants enjoys unparalleled access to the President and other members of his administration. Defendants' responsibilities extend to virtually every area of government activity. Kushner has aptly been described as "*one of the President's closest advisors*." See Exhibit 10 McGahn memorandum.

73.     The public has a right to know whether and to what extent Defendants may financially benefit from their activities as public officials. The public has a right to know whether Defendants' business relationships, whether while in office or immediately prior to assumption of their official duties, could reasonably be expected to influence their activities as officers of the United States government.

74.     Further, the ethical example must be established at the highest levels of any organization. If the individuals at the most senior levels of government fail to comply with the provisions of the EIGA, nothing more can be expected from the thousands of other officials at the lower levels of government.

75.     Additionally, the Certificate of Divestiture issued to Kushner enabled him to minimize his tax burden resulting from the sale of assets required to comply with federal conflict of interest laws. The Certificate was granted because the assets covered by the Certificate created a significant risk of conflicts of interests. The public therefore has a heightened interest in knowing exactly what were the underlying assets of the entities that were covered by the Certificate of Divestiture.

        WHEREFORE, Plaintiff prays for:

(a)     Relief in the nature of mandamus, directing Defendants to amend their financial disclosure reports, for the purpose of reporting their undisclosed financial interests, as specifically described herein.

(b)     For a declaratory judgment that Defendants violated the public disclosure provisions of the Ethics in Government Act by failing to disclose their financial interests, as specifically described herein.

(c)     For the costs of this suit incurred by Plaintiff, and;

(d)     For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Jeffrey A. Lovitky

_____
D.C. Bar Number 404834
1776 K Street, N.W., Suite 800
Washington D.C. 20036
Tel: (202) 429-3393
Fax: (202) 318-4013
Email: jefflovitky@gmail.com